CITY OF DULUTH, ST. LOUIS COUN-
TY, Minnesota, Petitioner, Respondent,

v.

P.F.L., INC., formerly Jeno's, Inc., et
al., Appellants.

No. C2–88–342.

Court of Appeals of Minnesota.

Nov. 8, 1988.

David P. Sullivan, Sullivan & Setterlund, Ltd., Jerome P. Agnew, Bye, Boyd, Andresen, Gaylord W. Swelbar, Hanft, Fride, O'Brien, Harries, Swelbar & Burns, P.A., Duluth, Tyrone P. Bujold, Robins, Zelle, Larson & Kaplan, Minneapolis, for respondent.

Frank R. Berman, Scott G. Harris, Frank R. Berman, P.A., Minneapolis, Bruce E. Coleman, Robert E. Mathias, Duluth, for appellants.

Heard, considered and decided by FOLEY, P.J., and CRIPPEN and SHORT, JJ.

## OPINION

FOLEY, Judge.

This appeal is from an order of the court granting respondent City of Duluth's petition in condemnation and from a partial summary judgment also granted in favor of Duluth. We affirm.

## FACTS

In 1986, during a condemnation proceeding prior to the one now under consideration, Duluth petitioned to condemn property of appellant P.F.L., Inc. and others for the construction of a paper mill. The Minnesota Supreme Court affirmed the trial court's order granting condemnation of the property on the grounds of public use, necessity, and compliance with Minn.Stat. Ch. 458 and Ch. 472A (1986). *See City of Duluth v. State*, 390 N.W.2d 757 (Minn. 1986).

In accordance with this decision, P.F.L. vacated the building which stood on Lots 1 and 2, Block 209, Altered Plat of West Duluth, Third Division, and all of the surrounding property, and delivered possession to Duluth in July of 1986 with full knowledge that the project would go forward. A paper mill now stands on the site of the condemned property, including the two lots in question in this appeal.

After the valuation hearing in the original action, Duluth discovered a "clerical error" in one of the legal descriptions in the petition in condemnation. The alleged

error asserted by Duluth is that Lots 1 and 2 of Block 209, Altered Plat of West Duluth, Third Division, had been inadvertently omitted from Schedule A to the original petition. Conversely, P.F.L. argues that there was no clerical error and that Duluth was simply petitioning to take two additional lots.

An examination of the procedural history will aid in the understanding of the present status of this appeal. It was conceded that after the valuation hearing, Duluth moved to amend both the petition and the June 6, 1986 order in the original proceeding to include the two lots, alleging omission by inadvertence. On July 10, 1987, the trial court denied that motion, stating:

> Once the matter was decided by the trial court, and then appealed, the request of the City appears to the undersigned to be far too late, and must be denied.

Duluth appealed. That appeal was dismissed. Duluth then filed a new petition to condemn the two lots, made a motion for partial summary judgment, and requested that commissioners be appointed to determine the value of the property. The trial court granted the motion for partial summary judgment on the issues of public purpose, necessity and compliance with statutory authority and appointed three commissioners to determine the value of the two lots.

P.F.L. filed objections to the petition and asserted misrepresentation, undue influence, bad faith, tainted motive, and noncompliance with Minn.Stat. Ch. 474 (1986). P.F.L. contends that these issues had not been raised in the prior proceedings. P.F.L. also submitted an affidavit drafted by its attorney, Bruce E. Coleman, in an effort to raise material issues of fact to preclude summary judgment. Duluth filed an affidavit by its director of business development, David Sebok, to explain the allegations contained in Coleman's affidavit.

These were the only two affidavits submitted in accordance with the summary judgment motion. The trial court granted summary judgment and stated:

> This court has previously concluded that a separate action in condemnation is nec-

essary for these two lots; thus, this action has begun. The condemnation of the balance of the properties was diligently litigated through the appeal system. Judge Barnes made extensive findings concerning the *same areas now before the Court*, which was subsequently appealed and the Supreme Court wrote an exhaustive opinion confirming the lower court. All parties in the matter of the condemnation have been given full and fair hearings and an opportunity to be heard. The matter before this Court presents *no new factual* issues to be resolved and for that reason, the Court has granted the Petition in Condemnation.

(Emphasis added.) P.F.L. now appeals.

## ISSUE

Did the trial court err in granting summary judgment?

## ANALYSIS

### Standard of review

Summary judgment is appropriate in cases where there is no genuine issue as to any material fact, and it is clear that the moving party is entitled to judgment as a matter of law. *See* Minn.R.Civ.P. 56.03.

Here, Duluth filed a petition for condemnation, and a motion for partial summary judgment. In response, P.F.L. filed objections to condemnation. Minn.R.Civ.P. 56.05 provides:

> An adverse party may not rest upon the mere averments or denials of his pleading but must present specific facts showing that there is a genuine issue for trial.

We consider the objections to condemnation filed by P.F.L. analagous to an answer. As such, it is considered a pleading, and a party may not rely solely on this in opposition to a summary judgment motion. The Minnesota Supreme Court has stated:

> We have repeatedly held that under Rule 56.05, Rules of Civil Procedure, upon a motion for summary judgment the party opposing the motion cannot rely upon the naked allegations of his pleadings and must present specific facts showing gen-

uine issues for trial unless the facts adduced by the moving party fail to negate facts sufficiently alleged in the pleadings.

*Morgan v. McLaughlin,* 290 Minn. 389, 393, 188 N.W.2d 829, 832 (1971).

*Attorney Bruce E. Coleman's Affidavit*

■ P.F.L. submitted only one affidavit in opposition to the summary judgment motion. This affidavit was drafted by its attorney and contained only his "opinions," "beliefs," and allegations, none of which have been verified. Minn.R.Civ.P. 56.05 requires affidavits to be made on personal knowledge. As a result, Coleman's affidavit was not adequate under Rule 56.05 to oppose summary judgment. *See Boulevard Del, Inc. v. Stillman,* 343 N.W.2d 50, 52–53 (Minn.Ct.App.1984) (attorney's affidavit stating what the attorney believes will be disregarded.). Coleman, however, asserts that his affidavit *is* based on his own personal knowledge gained through his own investigation and research, and therefore the affidavit is proper. He relies on the following assertions in his affidavit.

1. He has personally reviewed documents and has formed the "opinion" that when Duluth entered into a fixed price contract with Minnesota Power, that Minnesota Power knew but did not disclose to Duluth that the cost would exceed the agreed upon fixed price. He has no expert affidavits to support his "opinion."

2. The city auditor revealed he had not been permitted to examine statements and authorize payments in relation to the Hibbard project, and the procedure that Minnesota Power follows is different from any other. Coleman offers no affidavit from the city auditor.

3. He asserts his "opinion" that the studies which were conducted for Minnesota Power indicate that the cost of the Hibbard project would be approximately $35 million, yet Coleman "believes" that this cost estimate was not communicated to Duluth until long after the $26.2 million bonds had been sold. He has no support for this belief.

4. He contends that his access to public documents was restricted to two hours during any day, that the city treasurer would assign an individual to supervise his review of the documents at one and one-half times the pay rate, that a city treasury official had to be present to assure that documents would not be taken by him, that the city treasurer "insisted" upon a charge of $.25 per copy, and that on one occasion they did not have a table for him so he could not review the documents. In short, he contends that he was the "subject of a number of tactics on the part of the city treasurer which were both evasive and of an unreasonable nature to impose an outrageous expense upon him in order to review public documents." None of these allegations have been substantiated.

5. In his review of the documents, he noted a number of "inconsistencies" which "lead him to believe" that Minnesota Power and Duluth had "colluded to cause paper mill expenses to be charged against the Hibbard project and thereby increase the cost to the city and decrease the cost to the paper mill owners." He then cites three instances which "to his understanding," are inconsistencies. These allegations are not supported by expert affidavits.

6. He asserts that Claud Washington, the person in charge of the city purchasing department, told him that Duluth did not have documents which should have been in their possession for transactions already entered into. He provides no affidavit by Washington to verify this.

We recognize that the rules of professional conduct permit lawyers to testify on behalf of clients in some circumstances, but even so, we find the affidavit here is insufficient as a matter of law under Minn.R. Civ.P. 56.05. *See* Minn.R.Prof. Conduct 3.7.

*Collateral Estoppel*

■ Since P.F.L. has failed to raise any material issue of fact, we need not consider the issue of collateral estoppel. Duluth argued that the doctrine of collateral estoppel should apply. The trial court did not specifically grant summary judgment on that basis. Instead, the trial court, with

particularity, granted summary judgment because there was no material issue of fact raised. Specifically, the trial court stated:

> The matter before this Court presents no new factual issues to be resolved and for that reason, the Court has granted the Petition in Condemnation.

We observe that P.F.L. had the opportunity and did fully and vigorously litigate the original condemnation action. The trial court in its memorandum stated that although it was "in substantial sympathy with Paulucci, [it] has not accepted his arguments on various factual disputes." The trial court also stated:

> Paulucci did only what any landowner has a right to do, namely to challenge the proceeding with *every legal, factual* and *constitutional basis available.* It is, unfortunately, only a party with substantial resources who can mount such defenses; most landowners must meekly give up, lacking resources to struggle against the condemnation process.

(Emphasis added.)

We also observe that in the prior condemnation proceeding, which was reviewed and affirmed by the Minnesota Supreme Court, P.F.L. asserted that Duluth's resolution condemning the property of P.F.L. was based on an "arbitrary and capricious" decision. The supreme court there held that "in light of the limited scope of review, the city's determinations should be upheld." *See Duluth,* 390 N.W.2d at 766. If there was wrongful conduct by members of the city council, the taxpayers could bring suit, and apparently one is pending at this time.

Accordingly, we hold that Duluth was entitled to summary judgment as a matter of law and that the affidavit submitted by P.F.L.'s attorney was not proper under Minn.R.Civ.P. 56.05 to oppose summary judgment.

P.F.L. had a full and fair opportunity to be heard before the trial court in the original action and, as well, before the Minnesota Supreme Court. In addition to the compensation for its other land included in the initial condemnation action, P.F.L. will also be compensated for the two lots at issue in this appeal.

DECISION

AFFIRMED.